# EXHIBIT A

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

MCAD DOCKET NUMBER: 10BEM01078
FILING DATE: 03/04/10

EEOC/HUD CHARGE NUMBER: 16C-2010-01454
VIOLATION DATE: 07/22/09

Name of Aggrieved Person or Organization:

Salin Nuth
84 Perry Street
Lowell, MA 01852
Primary Phone: (978)758-7775 ext. ____

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:

Kelly Services
Attn: Director of Human Resources
500 W. Cummings Park
Suite 1100
Woburn, MA 01801
Primary Phone: (781)932-3600 ext. ____

Paul Bordonaro, Individually
c/o Kelly Services
Attn: Director of Human Resources
500 W. Cummings Park
Suite 1100
Woburn, MA 01801
Primary Phone: (781)932-3600 ext. ____

Andrew Van Kurn, Individually
c/o Kelly's Services
Attn: Director of Human Resources
500 W. Cummings Park
Suite 1100
Woburn, MA 01801-6506
Primary Phone: (781)932-3600 ext. ____

No. of Employees: 20 +

Work Location: Woburn, MA

Cause of Discrimination based on:
National Origin, Pacific Islander Sex, Female (Pregnancy/Maternity-related); Disability; Race, Color, (Asian) and Paragraph 4, Retaliation.

The particulars are:
I, Salin Nuth, the Complainant believe that I was discriminated against by Kelly Services, Paul Bordonaro, Individually and Andrew Van Kurn, Individually, on the basis of National Origin, Sex, Disability, Race, Color and Retaliation. This is in violation of M.G.L. 151B Section (4) Paragraph 1, 16, 4 and ADA.

see attached

MCAD Docket Number 10BEM01078, Complaint



**KELLY**
SERVICES

June 29, 2009

**VIA FACSIMILE 508-587-0992
AND U.S. MAIL**

Elizabeth M. Clague, Esq.
The Kennedy Building
142 Main Street
Suite 304
Brockton, MA 02301

RE: Salin Nuth

Dear Ms. Clague:

I am in receipt of your letter dated June 18, 2009. Thank you for your patience while Kelly Services, Inc. ("Kelly") investigated the claims of your client, Ms. Salin Nuth. Ms. Nuth alleges that she was wrongfully terminated, denied promotion for discriminatory reasons, and intimidated, coerced and retaliated against. She further alleges that Kelly is interfering with her ability to secure future employment by distributing defamatory information about her. Kelly unequivocally denies these allegations.

Ms. Nuth began her employment with Kelly on August 29, 2006. In April 2007, she was promoted to Partnered Staffing Supervisor and was placed on-site with our customer, Google. She was one of two Partnered Staffing Supervisors placed at Google. Kelly's Partnered Staffing program provides customers with dedicated on-site support of their temporary workforce. The Partnered Staffing Supervisor acts as an extension of the customer's human resources department by developing and maintaining the relationship with the customer and temporary employees through best-in-class service. Customer-related service includes taking and filling orders, managing the order lifecycle, resolving problems, developing business, monitoring contract compliance and reporting, and conducting business reviews. Temporary employee-related service includes targeted recruiting, screening, hiring, training, orientation, problem resolution and employee relations management.

Ms. Nuth held the position of Partnered Staffing Supervisor at Google until the time of her termination in April 2009. Despite your client's allegations, she was not terminated for any discriminatory or unlawful reason. Kelly's relationship with Google ended and, as such, an on-site Partnered Staffing Supervisor was no longer necessary. Moreover, Ms. Nuth was the least senior employee at the Kelly branch. Therefore, her position was eliminated because the branch could not retain an extra position..

Your letter further alleges that Kelly denied Ms. Nuth a promotion "to which she was entitled" due to her gender, race and national origin. Kelly denies these allegations. Ms. Nuth applied for a position as a Recruiter with Kelly IT Resources ("KITR"), a division of Kelly providing professional/technical staffing in the IT field. The KITR hiring manager contacted Ms. Nuth's regional manager for feedback regarding her performance. The regional manager shared her concerns regarding Ms. Nuth's professional development, an area which was identified to Ms. Nuth as requiring improvement. The KITR hiring manager chose not to select Ms. Nuth for the position based on that feedback.

Kelly has made a fair and reasonable offer to Ms. Nuth of termination pay in the amount of $3,392.32. She has additionally been offered outplacement services through the Ayers Group. Kelly will hold this offer open to Ms. Nuth until July 10, 2009. Please return the enclosed Severance Agreement, signed by Ms. Nuth, to my attention and Kelly will immediately process payment to Ms. Nuth.

I look forward to hearing from you and to promptly resolving this matter.

Sincerely,

KELLY SERVICES, INC.

Drew Baker /KN

Drew Baker
Corporate Counsel

EXHIBIT C

wage payment laws, (c) any and all claims related to Michigan fair employment laws, (d) any and all claims pursuant to the Michigan Whistleblowers' Protection Act and/or claims or complaints pursuant to the federal Sarbanes-Oxley Act of 2002, and (e) any claim arising under common law.

Employee and Employer intend that, to the fullest extent permitted by law, this waiver, release, and discharge is a general release and it shall extinguish any claims, arbitration demand or cause of action by Employee against Employer about anything that occurred before the date of this Agreement. This Agreement includes a release of Employee's right to file a lawsuit or to seek individual remedies or damages in any EEOC-filed court action, and this release will apply to any Charge of Discrimination about any events that occurred up to the date of the signing of this Agreement. The only claims and causes of action that Employee is not waiving, releasing, or discharging are for the consideration that Employee will receive under paragraph 2 of this Agreement and any claims and causes of action that, as a matter of law, cannot be waived, released, or discharged.

(b) <u>Accord and Satisfaction.</u> The consideration set forth in this Agreement is in full accord and satisfaction of any claims and any causes of action that Employee has, may have, or may have had against Employer related to, arising in the course of or arising out of Employee's employment with Employer or the termination of Employee's employment with Employer.

(c) <u>No Reemployment.</u> Employee will not apply for or seek employment with Employer after the execution of this Agreement.

(d) <u>Application for Modification or Waiver.</u> After April 20, 2009, Employee may apply in writing for a discretionary modification or waiver of any provision of this Agreement based on the particular facts and circumstances of Employee's situation. In the event such modification or waiver is granted, it shall not be construed, in any way, as an admission by Employer that the provision modified or waived is unenforceable, unreasonable, or that it otherwise does not protect Employer's legitimate business interests. If Employee embarks on conduct which violates this Agreement without making such a written application, Employee shall have no right to object later to the reasonableness or enforcement of its terms. To be effective, any modification or waiver by Employer must be in writing signed by an officer of Employer and attested to by Employer's Corporate Secretary or Assistant Secretary.

4. **Knowing and Voluntary Acceptance.**

(a) <u>Advice of Counsel.</u> Employer has advised Employee to consult with an attorney of Employee's choice, at Employee's expense, before signing this Agreement.

(b) <u>Sufficient Time to Review Agreement.</u> Employee has had a sufficient amount of time totaling twenty-one (21) days to consider the terms of this Agreement, to discuss all aspects of this Agreement with Employee's attorney, if Employee chose, to do that, at Employee's expense, and to decide whether to accept it. No change to this Agreement, whether material or immaterial, will initiate a new twenty-one (21) day period.

(c) <u>Early Submission of Agreement.</u> Employee may voluntarily and knowingly sign, but is not required to sign, this Agreement before the end of the twenty-one (21) day period, provided that Employee signs the attached Early Submission Form. Employer has made no promises, inducements, representations, or threats to cause Employee to sign this Agreement before the end of the twenty-one (21) day period. If Employee voluntarily and

knowingly signs this Agreement before the end of the twenty-one (21) day period, the mandatory seven (7) day revocation period set forth in paragraph 5(a) will start on the day after the day on which Employee signs this Agreement.

(d) <u>Knowing and Voluntary Acceptance.</u> Employee has carefully read this Agreement, understands it, and is entering it knowingly and voluntarily, which means no one is forcing or pressuring Employee to sign it.

(e) <u>No Reliance on Any Other Representation.</u> In signing this Agreement, Employee has not relied upon any Employer representation or statement, either oral or written, about the subject matter of this Agreement that is not set forth in this Agreement.

5. **<u>Right to Revoke Acceptance of Agreement.</u>**

(a) <u>Right to Revoke.</u> Employee is entitled to revoke this Agreement within seven (7) days after the date on which Employee signs it. The seven (7) days will start on the day after the day on which Employee signs this Agreement. The Agreement will not become effective or enforceable until after this revocation period has expired, and no revocation has occurred. Employer will not pay Employee the payment described in paragraph 2(a) of this Agreement until after this revocation period has expired, and no revocation has occurred. If Employee revokes this Agreement during the seven (7) day revocation period, the Agreement will not be effective or enforceable, and Employee will not receive any of the termination benefits set forth in this Agreement.

(b) <u>Revocation Procedure.</u> To be effective, any revocation must be in writing, addressed to Employer, **Attention: Shannon Cain, Human Resources, 999 W. Big Beaver Road, Troy, Michigan 48084,** and either postmarked within the seven (7) day revocation period or hand delivered to Employer within the seven (7) day revocation period. If revocation is made by mail, mailing by certified mail return receipt requested is recommended to show proof of mailing.

(c) <u>Effect of Failure to Revoke.</u> Employee understands that by signing this Agreement and by not revoking the Agreement during the seven (7) day revocation period, Employee shall be bound by this Agreement.

(d) <u>Effective Date.</u> The Agreement will become effective after the Revocation period described within Section 5 and only if both parties sign the Agreement.

6. **<u>Non-admission of Liability.</u>** This Agreement shall not be used or construed as an admission of liability or wrongdoing by either Employer or Employee. Employer denies that it acted unlawfully, tortiously, or in violation of any employment law affecting Employee.

7. **<u>Confidential Information.</u>** Employee agrees and acknowledges that during his/her employment, he/she was exposed to confidential and proprietary information and trade secrets of the Employer. The confidential and proprietary information and trade secrets include, but are not limited to, the Employer's customer lists, operational procedures, marketing and sales strategies and practices, pricing information, margin information, markup information, prospect lists, customer and prospect needs and preferences information, prospective employees, employee lists, employee capabilities matrices, employee training information and practices, and the methods and operations of the Employer as they exist from time to time (the "Confidential Information").

EXHIBIT D

REP_ID: OAHRF0040

# Kelly Custom Employee Profile Report

| Ex-Employee: | Term Date: | | Service Ann Date: | Current Hire Date: | Years of Service: | Original Hire Date: |
|---|---|---|---|---|---|---|
| Nuth, Salin | 04/20/2009 | | 08/29/2006 | 08/29/2006 | 2.6 | |

## Work History

| Eff Dt | Activity | Title | EX | Grade | Org. Name |
|---|---|---|---|---|---|
| 21-Apr-09 | Terminate Assignment | Supervisor.Partnered Staffing. | SE | 36.I. | 003216 - GOOGLE |
| 11-Mar-09 | Leave of Absence | Supervisor.Partnered Staffing. | SE | 36.I. | 003216 - GOOGLE |
| 28-Jan-09 | Leave of Absence | Supervisor.Partnered Staffing. | SE | 36.I. | 003216 - GOOGLE |
| 01-Oct-08 | Functional Title Cha | Supervisor.Partnered Staffing. | SE | 36.I. | 003216 - GOOGLE |
| 18-Sep-08 | Supervisor Change | Supervisor.Partnered Staffing. | SE | 36.I. | 003216 - GOOGLE |
| 14-Apr-08 | GEO Change | Supervisor.Partnered Staffing. | SE | 36.I. | 003216 - GOOGLE |
| 02-Apr-07 | Promotion and Transf | Supervisor.Partnered Staffing. | SE | 36.II. | 003213 - CHELMSFORD |
| 26-Mar-07 | Supervisor Change | Supervisor.Staffing. | SE | 34.II. | 003213 - CHELMSFORD |
| 20-Feb-07 | Supervisor Change | Supervisor.Staffing. | SE | 34.II. | 003213 - CHELMSFORD |
| 29-Aug-06 | New Hire | Supervisor.Staffing. | SE | 34.II. | 003213 - CHELMSFORD |

## Previous Employment

| From | To | Employer | Title | | | Base Pay |
|---|---|---|---|---|---|---|
| Apr-06 | Aug-06 | Reardon Associates | Program Manager | | | |
| Jan-05 | Apr-06 | Universal Resources | Program Manager | | | 46,000 |
| Dec-02 | Jun-04 | Enterprise Rent A Car | Mgmt Assistant | | | 38,000 |

## Education

| Degree Title | Year | Institution | Major | Minor |
|---|---|---|---|---|
| Bachelors Degree | 2002 | University of Massachusetts System : A | Business Mgmt | |
| | | | Sociology | |

### Languages

### Training - Course Name

| | Comp Date | Provider | Licenses | Certifications |
|---|---|---|---|---|
| Harassment Training | 09/01/2006 | | | |

## Salary History

| Eff Dt | Reason | Title | % Time | Salary | Inc Amt | % Inc | Performance Rating | |
|---|---|---|---|---|---|---|---|---|
| Jun-08 | Merit | Supervisor.Partnered Staffing. | 100 | 44,100 | 1,100 | 2.6 | ER | 01/01/2008 |
| Apr-07 | Merit | Supervisor.Partnered Staffing. | 100 | 43,000 | 1,200 | 3.2 | NRNEW | 01/01/2007 |
| Apr-07 | Promotion | Supervisor.Partnered Staffing. | 100 | 43,000 | 3,800 | 10.0 | | |
| Aug-06 | New Hire | Supervisor.Staffing. | 100 | 38,000 | 0 | 0.0 | | |

KELLY RESTRICTED - Only Originator May Authorize Copy

000065

REP_ID: OAHRF0040

Kelly Custom Employee Profile Report

| Additional Comp | From | To | Stock Options | Auto Plan | Start | End |
|---|---|---|---|---|---|---|
| FIP M-10 | Jan-07 | Apr-09 | | | | |
| FIP 15-01 | Aug-06 | Dec-06 | | | | |

**Confidential Information**

| EE ID No. | Birth Date | Age | Ethnicity | Gender | Background Check | Soc. Sec. No. |
|---|---|---|---|---|---|---|
| 109865 | 12-Jul-79 | 32 | Asian | F | 08/25/2006 | 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 |

000066

**EXHIBIT E**



**Paul Bordonaro**/HQ/USA/Kelly
01/08/2009 11:15 AM

To Shannon Cain/HQ/USA/Kelly@Kelly
cc
bcc
Subject RIF info

Hi Shannon,

As additional reduction in force measures may be necessary here, I am looking for the current guidelines/policies for the process. Specifically what criteria can be used when determining who can be selected. For example if I am reducing number of branch managers and selecting one out of two and having the one remaining manage both branches for the time being, are there specific steps for determining which one stays and which one leaves?

Also, what is the communication, approval and severance levels needed?

Thanks
Paul Bordonaro | VP & Regional Manager | Kelly Services, Inc.
☎ 978.250.1698 | 📠 978.250.0164 | ✉ bordopa@kellyservices.com



3) Marguerite (mgr) filling in for Julian while on Mat. lv. Monster going away

000915